## S98A1785. METTS v. THE STATE.
### (511 SE2d 508)

BENHAM, Chief Justice.

Appellant Bobby Metts was convicted of the January 1995 felony murder of Alfred Patterson, who was fatally shot outside the second-

---

story window of an Atlanta townhouse.[1] The State presented as witnesses the tenant of the townhouse and her cousin who was staying with her. The cousin testified that the victim, the boyfriend of the tenant, repeatedly knocked on the window of the second-story room being used by the witness and asked to speak with the tenant. The cousin testified that the tenant and appellant, who was visiting the tenant, came into the room. After the tenant left to get a key to let the victim in the back door, appellant twice demanded that the person at the window leave. Appellant then fired a gun through the window, striking the victim. Appellant admitted to police officers that he had shot the victim, but asserted that his gun had fired accidentally when something (the window curtain or blind, or his other hand) had struck the cocked gun. The tenant's cousin testified that he saw nothing strike the hand in which appellant was holding the gun. The jury acquitted appellant of malice murder, felony murder/aggravated assault, and aggravated assault, and found him guilty of felony murder/possession of a firearm by a convicted felon and possession of a firearm by a convicted felon.

1. Appellant maintains that the "status offense" of being a convicted felon in possession of a firearm cannot support the felony murder conviction in this case. In *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992), we determined that the underlying felony supporting a felony murder conviction had to be dangerous per se or had to create a foreseeable risk of death when the attendant circumstances were taken into account. We recognized that a "status felony" such as possession of a firearm by a convicted felon was not inherently dangerous, but acknowledged that "circumstances may well exist under which such a felony may be considered dangerous. . . ." Such circumstances exist in the case at bar, as there was evidence that appellant pointed a loaded, cocked gun in the direction of a window, on the other side of which he knew there was a human being. Appellant's possession of the firearm was dangerous and life-threatening, and had "an undeniable connection to the homicide. . . ." *Roller v. State,*

---

[1] The homicide occurred on January 22, 1995. A warrant for appellant's arrest was issued January 25, and he was arrested in Columbus, Georgia, on June 18, 1995. A true bill of indictment charging him with malice murder, felony murder/aggravated assault, felony murder/possession of a firearm by a convicted felon, aggravated assault, and possession of a firearm by a convicted felon, was returned August 6, 1996. His trial commenced on October 23, 1996, and concluded with the jury's return of a verdict acquitting appellant of the malice murder, felony murder/aggravated assault, and aggravated assault charges, and convicting him on the felony murder/possession of a firearm and firearm possession charges. He was sentenced to life imprisonment on October 29, 1996, and filed a motion for new trial on November 22. After the withdrawal of counsel and the appointment of new appellate counsel, the motion for new trial was amended on November 4, 1997. The amended motion was denied on January 12, 1998, and the notice of appeal was filed on January 16. The appeal was docketed in this Court on August 6, 1998, and submitted for decision on the briefs.

265 Ga. 213 (2) (453 SE2d 740) (1995). See also *Chapman v. State*, 266 Ga. 356 (2) (467 SE2d 497) (1996). In light of the circumstances, the status felony was sufficient to support appellant's felony murder conviction.

2. Appellant maintains the evidence presented was insufficient to authorize the jury's verdict finding him guilty of felony murder. However, there was sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that appellant had caused the death of another human being while in the commission of a felony, i.e., being a convicted felon in possession of a firearm in a dangerous and life-threatening manner. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Roller v. State*, supra, 265 Ga. 213 (2). Compare *Ford v. State*, supra, 262 Ga. 602. That there was evidence from which the jury could have determined the shooting was accidental does not take away from the fact that the requisite evidence necessary to support the guilty verdict was presented to the jury, as it was for the jury to resolve any conflicts in the evidence and determine the credibility of the witnesses. *Palmore v. State*, 264 Ga. 108 (441 SE2d 405) (1994). That the jury acquitted appellant of the aggravated assault charge does not make the evidence of felony murder/possession of a firearm by a convicted felon any less sufficient; furthermore, even if the acquittal were inconsistent with the conviction, the inconsistency cannot be used as an avenue to challenge the conviction since the "inconsistent-verdict rule" has been abolished in this state. *Milam v. State*, 255 Ga. 560 (2) (341 SE2d 216) (1986). Cf. *Dumas v. State*, 266 Ga. 797 (2) (471 SE2d 508) (1996).

3. Appellant was arrested in Columbus, Georgia, six months after the victim was killed. A Columbus police detective on the fugitive squad testified that appellant began talking about the Atlanta shooting when the detective asked "booking" questions related to appellant's identity. The officer then advised appellant of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), after which appellant admitted shooting the victim. Some days later, as Atlanta police officers prepared to transport appellant from Columbus to Atlanta, one officer informed appellant of his rights under *Miranda*, and suggested appellant not discuss the January shooting since the officers had no means to document any comments made during the ride to Atlanta. Shortly thereafter, appellant stated, "I shot him." The trial court held a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), and authorized the use of appellant's statements at trial after determining that appellant had been informed of his rights on each occasion and that he knowingly and voluntarily had waived his rights.

The pre-*Miranda* inculpatory statement made to the Columbus

detective was not subject to suppression because it was not the product of an interrogation or its functional equivalent. See *Rhode Island v. Innis*, 446 U. S. 291 (100 SC 1682, 64 LE2d 297) (1980). Asking questions normally attendant to arrest and custody is not a "custodial interrogation" which requires the administration of *Miranda* warnings. *Mincey v. State*, 257 Ga. 500 (10) (360 SE2d 578) (1987). The trial court found the post-*Miranda* statement made to the Columbus officer had been made after appellant had been informed of his rights and had knowingly and voluntarily waived them, and we accept those findings since they have not been shown to be clearly erroneous. *Yorker v. State*, 266 Ga. 615 (4) (469 SE2d 158) (1996). The post-*Miranda* statement to the Atlanta officers was a spontaneous statement made by appellant and was not subject to exclusion under *Miranda* because it was not the product of custodial interrogation. *Miller v. State*, 263 Ga. 723 (3) (438 SE2d 81) (1994).

4. Finally, appellant maintains the assistant district attorney used a portion of her closing argument to impermissibly vouch for the credibility and veracity of one of the State's witnesses.[2] "In appearing in [a] professional capacity before a tribunal, a lawyer shall not: . . . assert [a] personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused." Directory Rule 7-106 (C) (4), Rules and Regulations of the State Bar of Georgia. It is improper for counsel to state to the jury counsel's personal belief as to the veracity of a witness; however, it is not improper for counsel to urge the jury to draw such a conclusion from the evidence. *Shirley v. State*, 245 Ga. 616, 618 (266 SE2d 218) (1980).

An objection to improper closing argument must be voiced when the alleged impropriety occurs at trial in order that the trial court may take remedial action, if necessary. *Todd v. State*, 261 Ga. 766 (2) (a) (410 SE2d 725) (1991). In the case at bar, appellant did not interpose an objection to the assistant district attorney's argument. Such failure to act has been held to constitute a waiver of the right to raise the issue on appeal (*Wyatt v. State*, 267 Ga. 860 (2) (a) (485 SE2d 470) (1997); *Miller v. State*, 267 Ga. 92 (2) (475 SE2d 610) (1996)); in other cases, the failure to object to improper closing argument has resulted in a review of the questioned argument to determine if there is a "reasonable probability" that, but for the improper argument, the result of the trial would have been different. See, e.g., *Todd*, supra;

---

[2] During her closing remarks, the assistant district attorney said, "Remember what [the State's witness] told you, how [appellant] was bragging about all this money he had and how he was so good. Look at the credibility of [the State's witness] there. It seems to me like what [the State's witness] is saying is true; and I'll pit [the State's witness and another State's witness] against [appellant] any day of the week."

*Mize v. State*, 269 Ga. 646 (8) (501 SE2d 219) (1998); *Bright v. State*, 265 Ga. 265 (19) (455 SE2d 37) (1995). Recently, we resolved the seeming discrepancy in the standard of appellate review by holding that the "reasonable probability" test is applicable only to the review of a criminal case in which the death penalty was imposed. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999). Our statutory duty to ensure that the sentence of death has not been imposed due to passion, prejudice or other arbitrary factor, a duty applicable only in the review of cases in which the death sentence has been imposed, is the basis for our decision to expressly limit to death penalty cases the exception to the appellate practice of declining to review improper argument contentions which were not brought to the attention of the trial court. OCGA § 17-10-35 (c) (1). *Hicks v. State*, 256 Ga. 715 (23) (352 SE2d 762) (1987); *Spivey v. State*, 253 Ga. 187 (4) (319 SE2d 420) (1984); *Conner v. State*, 251 Ga. 113 (6) (303 SE2d 266) (1983). See also *Whatley v. State*, 270 Ga. 296 (509 SE2d 45) (1998) (special concurrence of Thompson, J.). Since appellant's conviction did not result in the imposition of the death penalty, his failure to object at trial to allegedly improper argument precludes appellate consideration of the merits of his contention.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 8, 1999.

*Elaine T. McGruder,* for appellant.
*Paul L. Howard, District Attorney, Bettieanne C. Hart, David E. Langford, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, H. Maddox Kilgore, Assistant Attorney General,* for appellee.