## S00A1620. WOLFE v. THE STATE.
(544 SE2d 148)

HINES, Justice.

Christopher Wolfe was found guilty of two counts of felony murder, aggravated assault, arson in the first degree, and criminal possession of an explosive device in connection with the firebombing of an apartment and the resulting deaths of two young children and injury to their mother. Wolfe appeals his convictions, challenging the admission of "gang evidence"; the disqualification of a member of the venire; the composition of the jury; the court's alleged restriction of cross-examination of a State's witness; and the court's refusal to find merger of the aggravated assault for the purpose of sentencing. Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes occurred on July 22, 1994. On November 29, 1994, a Fulton County grand jury indicted Christopher Wolfe, along with Kimjon Ingram, Cassandra Hefflin, and Geneva Haith for the malice murders of Donisha Henderson and Lexusous Henderson; the felony murders of Donisha Henderson and Lexusous Henderson during commission of at least one of the following felonies: arson in the first degree, criminal possession of an explosive device,

The evidence construed in favor of the verdicts showed that on July 22, 1994, gas explosives were thrown into the apartment of Charmaine Henderson. She lived there with her two infant daughters, Donisha and Lexusous, and her friend Cantanius White. As a result, Henderson, although able to escape the apartment, was injured. Her two small children were not rescued and died of smoke inhalation. Christopher Wolfe, Cassandra Hefflin, Geneva Haith, and Kimjon Ingram, all of whom were members of the FOLKS street gang, were arrested and charged for the crimes.

The fatal firebombing was retaliation stemming from a disagreement, which occurred approximately a day and a half earlier, between Cassandra Hefflin's sister, Annette, and White. The two argued over possession of some clothing and Annette threatened that she had called Cassandra, and that Cassandra was in a gang. Later, Cassandra and Annette confronted Henderson and White and threatened Henderson's children. Cassandra telephoned fellow gang member, Ingram, and told him that Annette was in a fight with someone living in Henderson's apartment and needed help; Cassandra told Ingram to check on her sister and to "go blow it up if he had to." There was a three-way call with Ingram, Cassandra and Wolfe, in which Ingram informed Wolfe about the situation with White and Henderson and that Cassandra wanted Ingram to "handle it for them"; Ingram told Wolfe that he would come to pick him up. Ingram borrowed a car and he and Haith drove to a service station to fill bottles with gasoline. Ingram and Haith picked up Wolfe and the two men discussed what was going to take place. Ingram stated that he "wanted to throw the bomb in the people's house, and he wanted [Wolfe] to watch out for him." Wolfe agreed, stating "[t]hem crabs gonna burn." Then he rode with Ingram and Haith to Henderson's apartment. Wolfe and Ingram assembled the explosive devices at the back of the car. Haith remained in the front seat and chatted with Kevin and David Butler, who were passing by. Ingram introduced Wolfe as his "partner." Wolfe or Ingram lit the wicks for the bombs and they threw the explosives through the window of Henderson's apartment. They then fled the scene. Afterward, when questioned by

aggravated assault; the aggravated assault of Charmaine Henderson; arson in the first degree; and criminal possession of an explosive device. Wolfe was tried before a jury July 16-24, 1997; he was acquitted of the malice murder counts but was found guilty of the remaining charges. By final dispositions, dated August 1, 1997, and filed August 20, 1997, Wolfe was sentenced to consecutive terms of life imprisonment for the felony murders and a consecutive 20 years incarceration for aggravated assault. Arson in the first degree and criminal possession of an explosive device were treated as merged for the purpose of sentencing. A motion for new trial was filed on August 12, 1998, amended on May 18, 1999, and denied on June 17, 1999. A notice of appeal was filed on July 16, 1999, and the appeal was docketed in this Court on June 16, 2000. The case was orally argued on September 19, 2000.

a fellow gang member about the firebombing, Wolfe stated, "I did it."

1. The evidence was sufficient for a rational trier of fact to find Wolfe guilty beyond a reasonable doubt of the felony murders of the children, the aggravated assault of their mother, and the related crimes. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Wolfe fails in his contention that the trial court erred when it granted the State's motion to strike for cause Jury Panel Member 15. Whether to strike a juror for cause is within the sound discretion of the trial court. *Henderson v. State*, 272 Ga. 621, 623 (7) (532 SE2d 398) (2000). And inasmuch as the trial court's conclusion on bias is based on findings of demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference. *Brady v. State*, 270 Ga. 574, 575 (2) (513 SE2d 199) (1999).

The potential juror related that she was an attorney at a well known criminal defense firm in Atlanta and had been there for 18 years; that while she headed up the civil litigation for the firm, she had done some criminal defense work; that she was then handling the civil aspect of a criminal case involving the prosecutor; and that she would probably look at the evidence as a defense lawyer. Contrary to Wolfe's argument, the fact that the woman stated that she would try to be objective is not dispositive on the question of bias. *Lively v. State*, 262 Ga. 510, 511 (1) (421 SE2d 528) (1992). It was for the court, based on all the known circumstances, to determine whether the potential juror could render an impartial verdict based solely on the evidence at trial. Id. And, under these circumstances, it cannot be found that the court abused its discretion in concluding otherwise. *Henderson v. State*, supra at 623 (7).

3. Wolfe contends that the jury was illegally constituted because of the trial court's grant of the State's motion pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992),[2] with regard to Juror 11. He complains that the trial court did not use the correct procedure and that the court erred in rejecting his race-neutral explanation for the challenged strike.

In evaluating a *Georgia v. McCollum* claim that the defendant has used peremptory challenges in a racially discriminatory manner,

> the trial court must engage in a three-step process. The opponent of a peremptory challenge must make a prima facie showing of racial discrimination; the burden of production shifts to the proponent of the strike to give a race-

---

[2] In *Georgia v. McCollum*, the United States Supreme Court extended the analysis of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986) to the peremptory challenges of criminal defendants.

neutral reason for the strike; the trial court then decides whether the opponent of the strike has proven discriminatory intent. The "ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."

*Chandler v. State*, 266 Ga. 509, 510 (2) (467 SE2d 562) (1996). And contrary to Wolfe's assertion, the court did not employ a procedure which improperly shifted the burden to him. The record shows that the court found that the State had made out a prima facie case. Wolfe then gave reasons for the strikes made. The State began to argue about the pretextual nature of Wolfe's reasons, and Wolfe objected that the court had not made a finding whether the reasons were race neutral. The court then, in essence, sustained Wolfe's objection and made the express finding that Wolfe's articulated reasons for the strikes were facially race neutral. Therefore, the court utilized the correct procedure and in no manner shifted the burden to Wolfe. *Chandler v. State*, supra at 510 (2).

Wolfe's complaint that the court improperly rejected his race-neutral reason for striking Juror 11 is equally unavailing. Wolfe explained that he struck Juror 11 "for the fact that he started his first day at his new job on Monday. It is our feeling that he would be eager to get back to work since it's a brand new job. And for that reason we chose to strike him." But the State argued that Juror 11 had not indicated any problem with jury selection, and that there were a number of members of the venire who had just started new jobs. The court ultimately refused to accept Wolfe's explanation, stating that there was nothing about Juror 11 that the court "could tell was in any way objectionable or otherwise. And in the context of this pattern, [the court did not] buy the explanation for 11." Thus, contrary to Wolfe's assertion, the court stated why it deemed his explanation to be disingenuous. The trial court's finding that the articulated reason for the strike was pretextual, and therefore, that the strike was exercised in a purposefully discriminatory manner must be affirmed unless clearly erroneous. *Jones v. State*, 270 Ga. 25, 26 (2) (505 SE2d 749) (1998). Inasmuch as the court found, with regard to Juror 11, no objection to jury service because of a new job or otherwise and an implicitly unacceptable "pattern" relevant to the strike, the trial court's upholding of the State's challenge to the peremptory strike of Juror 11 by the defense cannot be found to be clearly erroneous. Id. at 26 (2).

4. In five separate enumerations of error, Wolfe challenges the admission of evidence of his gang involvement, namely gang tattoos, gang colors and bandanas, gang hugs and handshakes, testimony regarding a five-pointed star, and testimony regarding gang hierar-

chy. But the challenges fail.

(a) It was not error for the trial court to overrule Wolfe's motion in limine to exclude gang evidence on the basis that such evidence improperly placed his character in issue. Whether to admit evidence is a matter resting in the trial court's sound discretion, and evidence that is relevant and material to an issue in the case is not rendered inadmissible because it incidentally places the defendant's character in issue. *Price v. State*, 269 Ga. 373, 374 (2) (497 SE2d 797) (1998). Evidence of gang membership or involvement is admissible to show motive. *Mallory v. State*, 271 Ga. 150, 153 (6) (517 SE2d 780) (1999); *Clark v. State*, 271 Ga. 6, 9 (4) (515 SE2d 155) (1999). And here, gang membership and involvement were key to Wolfe's motive for the crimes. The State's evidence was that Wolfe committed the acts at the request of fellow gang members. In fact, the evidence was that the gang's code of conduct obligated Wolfe to participate in these criminal acts or suffer repercussion.

(b) The record belies Wolfe's contention that the trial court failed to consider probative value versus prejudicial impact when it evaluated the admissibility of the gang evidence. See *Price v. State*, supra at 375 (2). And there is no merit to the claim that for the evidence to be probative enough to overcome the inherent prejudice, the State needed to show that the crime occurred in furtherance of the gang and that Wolfe knew that it was happening in furtherance of the gang. What is more, there was ample evidence that the murder was gang related.

(c) The State's failure to indict Wolfe under OCGA § 16-15-4 did not bar the introduction of gang-related evidence. There is no requirement that the State charge a defendant with violating the prohibition of participation in criminal street gang activity in OCGA § 16-15-4 in order to admit otherwise relevant evidence of gang activity. See *Billups v. State*, 272 Ga. 15, 16 (2) (a) (523 SE2d 873) (1999); *Mallory v. State*, supra at 153 (6); *Clark v. State*, supra at 9 (4).

(d) The trial court did not abuse its discretion is denying Wolfe's motion for mistrial on the basis that the State never connected the crimes to Wolfe's membership in the gang or showed that the crimes were committed in furtherance of the gang. See *Belton v. State*, 270 Ga. 671, 672 (2) (512 SE2d 614) (1999). The State linked evidence of gang activity to the motive for the crime and the hierarchy of the gang.

(e) The trial court did not err in refusing to redact portions of Wolfe's custodial statement which referred to his involvement in the gang on the basis that it impermissibly placed his character in issue.[3]

---

[3] Wolfe claims that the following language should have been redacted: "Quick [Kimjon

The evidence that Wolfe sought to have redacted was admissible. See Division 4 (a), supra.

5. Wolfe contends that the trial court erred when it refused to allow him to cross-examine State's witness David Butler regarding criminal charges allegedly pending against him. But this contention too is unavailing. Here, the criminal charges at issue were part of a "no bill" which had been returned by a Clayton County grand jury, and the court refused to consider them as "pending." However, the court acknowledged that cross-examination of a witness is a matter of right, and a permissible purpose of cross-examination is to attempt to elicit facts demonstrating that a witness's testimony is either unbelievable, biased, or partial. *Hodo v. State*, 272 Ga. 272, 274 (4) (528 SE2d 250) (2000); *Kennebrew v. State*, 267 Ga. 400, 402 (3) (480 SE2d 1) (1996), citing *Davis v. Alaska*, 415 U. S. 308, 316-317 (2) (94 SC 1105, 39 LE2d 347) (1974); *Hines v. State*, 249 Ga. 257 (2) (290 SE2d 911) (1982). Accordingly, the court stated that it would allow Wolfe to cross-examine Butler about pending criminal charges in Clayton County or any "deal" with the State in order to explore Butler's motivation for testifying. Compare *Beam v. State*, 265 Ga. 853, 856 (3) (463 SE2d 347) (1995). Under these circumstances, the court's limiting of cross-examination did not amount to an abuse of discretion. *Hodo v. State*, supra at 275 (4). What is more, shortly after beginning questioning of Butler about the alleged pending charges, Wolfe abandoned the line of inquiry regarding any possible bias.

6. Lastly, the trial court was authorized to sentence Wolfe for the aggravated assault of Charmaine Henderson because it did not merge, as a matter of law or fact, into either of the convictions for felony murder of her children. *Adams v. State,* 255 Ga. 356, 359 (5) (338 SE2d 860) (1986).

*Judgments affirmed. All the Justices concur.*

DECIDED MARCH 19, 2001 —
RECONSIDERATION DENIED APRIL 12, 2001.

*Anna Blitz,* for appellant.
*Paul L. Howard, Jr.,* District Attorney, *Bettieanne C. Hart, Christopher M. Quinn,* Assistant District Attorneys, *Thurbert E. Baker,* Attorney General, *Paula K. Smith,* Senior Assistant Attorney General, *Adam M. Hames,* Assistant Attorney General, for appellee.

Ingram] told me there was some Crips involved. . . . I thought that we was just going to fight with the Crips. I am a FOLK gang member out of GE Mobile, Alabama and I've been in it about a year and a half."