S02A1699. HINES v. THE STATE.
(578 SE2d 868)

FLETCHER, Chief Justice.

While hunting, Robert Lee Hines mistook his friend Steven Wood for a turkey and shot him dead. A jury convicted Hines of felony murder based on the underlying crime of possession of a firearm by a convicted felon, but acquitted him of felony murder based on the underlying felony of misuse of a firearm while hunting. On appeal, Hines contends that the jury's verdict is invalid because the jury cannot acquit him of killing the victim by misusing a firearm, yet convict him of killing the victim by possession of the same firearm, without having made inconsistent factual findings. Because Georgia does not recognize an inconsistent verdict rule and Hines's other enumerations are without merit, we affirm.[1]

Taken in the light most favorable to the jury's verdict of guilty,

---

[1] The crime was committed on April 8, 2001. On August 7, 2001, a grand jury indicted Hines for two counts of felony murder, possession of a firearm by a convicted felon, misuse of a firearm while hunting, possession of a firearm during the commission of a felony, tampering with evidence, and four counts of false statement. The State withdrew three of the false statement counts. On August 31, 2001, the jury acquitted Hines of one count of felony murder and convicted him of all remaining counts. The trial court merged the felon in possession conviction into the felony murder conviction and sentenced Hines to life imprisonment for felony murder followed by five years imprisonment for the possession of a firearm while committing a felony conviction. The court also imposed concurrent sentences on the remaining convictions. Hines moved for a new trial on September 21, 2001, and amended his motion on March 14, 2002. The trial court denied the motion for a new trial on March 26, 2002. Hines filed his notice of appeal on April 23, 2002. The case was docketed in this Court on July 22, 2002, and submitted for decision on September 16, 2002.

the evidence at trial showed that, late in the afternoon of April 8, 2001, Hines and some of his friends and relatives went turkey hunting. They split into two groups, with Hines and his friend Randy Stoker hunting together in one area, and the victim, the victim's wife, and Hines's son hunting in a different area, approximately one-fourth mile away. As the sky was growing dark, Hines heard a turkey gobble, "saw it fan out and shot." Hines's shot went through heavy foliage and hit the victim approximately eighty feet away. Immediately thereafter, the victim's wife screamed, "You shot Wood." Hines and his son went for help, but the victim died before help could arrive.

On his return, Hines tried to convince his son and Stoker to take responsibility for the shooting. They both refused. The entire group, however, agreed to say that they did not know who had shot Wood. Hines removed his camouflage clothing and hid his shotgun and hunting gear before the police arrived.

Two days later, Hines admitted he had shot Wood and showed the police where he had hidden his shotgun. Hines's son showed the police where he had hidden Hines's hunting clothing and gear, which included unopened cans of beer. An open beer can and foam insulation wrap that belonged to Hines were found near where Hines had fired the fatal shot.

1. We conclude that the evidence at trial was sufficient for a reasonable trier of fact to have found Hines guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. The jury acquitted Hines of felony murder based on misuse of a firearm while hunting and convicted him of felony murder based on possession of a firearm by a convicted felon. Hines contends that the verdict is void because the jury made inconsistent determinations that he did not cause Wood's death by misusing a firearm, but did cause his death by possessing the same firearm.

Georgia does not recognize an inconsistent verdict rule,[3] which would permit a defendant to challenge the factual findings underlying a guilty verdict on one count as inconsistent with the findings underlying a not guilty verdict on a different count. A conviction on one count and acquittal on another related count may reflect a compromise or lenity by the jury rather than inconsistent factual conclusions, and Georgia courts generally will not look behind the jury's decision to convict on certain counts and acquit on other counts.[4] Therefore, Hines's enumeration is without merit.

---

[2] See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Lawrence v. State*, 274 Ga. 794, 794 (560 SE2d 17) (2002); see also *Jackson v. State*, 276 Ga. 408 (577 SE2d 570) (2003).

[4] *Jackson*, 276 Ga. at 410, n. 3; *Dumas v. State*, 266 Ga. 797, 799 (471 SE2d 508) (1996).

3. Hines contends that a convicted felon's possession of a firearm while turkey hunting cannot be one of the inherently dangerous felonies required to support a conviction for felony murder. "The only limitation on the type of felony that may serve as an underlying felony for a felony murder conviction is that the felony must be inherently dangerous to human life."[5] A felony is "inherently dangerous" when it is " 'dangerous per se' " or " 'by its circumstances create[s] a foreseeable risk of death.' "[6] Depending on the facts, possession of a firearm by a convicted felon can be an inherently dangerous felony.[7]

In *Ford v. State*,[8] the defendant was a convicted felon who was unloading a handgun when it accidentally discharged, went through the floor, and killed an occupant of the apartment below. A jury convicted Ford for felony murder based on his felonious possession of a firearm. This Court reversed, finding that, because no evidence showed the defendant knew there was an apartment below him or that the victim was present, his possession of a firearm could not support a conviction for felony murder.[9]

In contrast to *Ford*, Hines intentionally fired his shotgun intending to hit his target. He had been drinking before he went hunting, and there was evidence that he had been drinking while hunting. He knew that other hunters were in the area and was unaware of their exact location. He also knew that other people visited the area in which he was hunting. He took an unsafe shot at dusk, through heavy foliage, at a target eighty feet away that he had not positively identified as a turkey. Under these circumstances, we conclude that Hines's illegal possession of a firearm created a foreseeable risk of death.[10] Accordingly, Hines's violation of the prohibition against convicted felons possessing firearms was an inherently dangerous felony that could support a felony murder conviction.

4. Hines claims that the trial court improperly allowed a lay witness to offer an expert opinion that went to the ultimate issue before the jury regarding whether Hines misused a firearm while hunting. At trial, the State offered Department of Natural Resources Ranger Greg Hall as an expert on hunter safety and turkey hunting. The trial court refused to recognize Hall as an expert in those areas, but

---

[5] *Hulme v. State*, 273 Ga. 676, 678 (544 SE2d 138) (2001).

[6] Id.

[7] See, e.g., *Metts v. State*, 270 Ga. 481, 482 (511 SE2d 508) (1999) (felon in possession of firearm inherently dangerous when defendant pointed loaded, cocked gun at window when he knew person was standing on the other side).

[8] 262 Ga. 602 (423 SE2d 255) (1992).

[9] Id. at 602-603.

[10] See also *Metts*, 270 Ga. at 482; *Chapman v. State*, 266 Ga. 356, 357-358 (467 SE2d 497) (1996) (misuse of firearm while hunting is an inherently dangerous felony that will support felony murder).

allowed him to testify that he would not teach students in his hunter safety classes that Hines's shot was "permissible or allowable."

Lay witnesses "may state their opinion only when it is based upon their own observations," and their opinions are admissible "only when it is necessary in order for a witness to convey those same observations to the jury."[11] A lay witness may not state his opinion when the facts relied upon by the witness can be "clearly described for the jury, and the jury can rely upon those same facts and reach its own opinion."[12] "Otherwise, by stating an opinion the jury could reach for itself, the lay witness is deemed to have invaded the jury's exclusive province."[13]

Hall's opinion that he would not teach hunter safety students that Hines's shot was "permissible or allowable" was not a proper lay opinion because it was not necessary to convey Hall's observations. Rather, Hall drew a conclusion based on his experience in hunter safety instruction regarding a matter that was not within the ken of the average juror (i.e., that Hines's shot would not be taught as a permissible shot in hunter safety classes). Therefore, Hall's testimony was admissible only as an expert opinion.

However, Hall's experience and credentials were sufficient to qualify him to offer an expert opinion regarding whether Hines's shot was permissible under hunter safety standards. Hall was a certified Georgia law enforcement officer, employed by the Department of Natural Resources in the law enforcement section of its Wildlife Resources Division. He had five years of experience teaching hunter safety courses, and his duties included enforcement of Georgia's hunting laws. The jury heard these qualifications, and Hines had an opportunity to cross-examine Hall regarding his qualifications as well as the substance of his testimony. Additionally, Hall's testimony was probative of whether Hines misused his firearm while hunting, but did not invade the jury's exclusive province to determine whether Hines was guilty of that crime. Accordingly, the trial court did not err in allowing Hall to offer his opinion.[14]

5. Hines asserts that the evidence did not authorize the jury to reject his mistake of fact defense. Under OCGA § 16-3-5, "[a] person shall not be found guilty of a crime if the act or omission to act constituting the crime was induced by a misapprehension of fact which, if

---

[11] *Johnson v. Knebel*, 267 Ga. 853, 855-856 (485 SE2d 451) (1997).

[12] Id. at 857.

[13] Id.

[14] See generally *Henry v. State*, 265 Ga. 732, 736-737 (462 SE2d 737) (1995) (interpreter offered expert opinion although not offered as expert witness); *Stewart v. State*, 246 Ga. 70, 75 (268 SE2d 906) (1980) (court implicitly recognized witness's expert status when it overruled objection to obviously competent witness's expert testimony); *Bacon v. State*, 225 Ga. App. 326, 327-329 (483 SE2d 894) (1997) (same).

true, would have justified the act or omission." Generally, however, "ignorance or mistake of fact constitutes a defense to a criminal charge only if it is not superinduced by the fault or negligence of the party doing the wrongful act."[15] Here, Hines's mistaken belief that Wood was a turkey was due to his own fault in taking an unsafe shot under unsafe conditions at a target that he had not positively identified as legal game. Accordingly, the jury was authorized to reject Hines's mistake of fact defense.

6. Hines's remaining enumerations are also without merit.

(a) The trial court did not commit reversible error in permitting the medical examiner to testify that he had classified Wood's death as a "homicide." The medical examiner testified the classification had nothing to do with the defendant's intent and meant only that "but for the actions of another individual" the decedent would not be dead.[16]

(b) Because the felon in possession of a firearm charge was an underlying felony for one of the felony murder counts, the trial court correctly denied Hines's motion to bifurcate the possession charge from the trial of the other charges.[17]

(c) The trial court did not commit reversible error in leaving in the indictment the references to Hines's habitual violator status and prior conviction for driving under the influence. Hines withdrew the motion to redact his habitual violator status from the indictment, and the reference to the DUI conviction was harmless because Hines referred to his DUI conviction in his statement to the police, which was introduced into evidence without objection.[18]

(d) The trial court was within its discretion in admitting the photographs of the deceased.[19]

(e) Ranger Hall's testimony regarding the hunter safety courses that he teaches did not elevate the standard under OCGA § 16-11-108 (misuse of a firearm while hunting) from a reasonable person standard to a reasonable person who has taken hunter safety courses standard. The trial court's instructions to the jury followed the statutory language, and "absent clear evidence to the contrary," "qualified jurors under oath" are presumed to follow the trial court's instructions.[20]

(f) Hines waived any objection to the trial court's omission of the general charge on the form of the verdict because he did not request

---

[15] *Crawford v. State*, 267 Ga. 543, 544 (480 SE2d 573) (1997) (punctuation omitted).

[16] See *Willis v. State*, 274 Ga. 699, 701 (558 SE2d 393) (2002).

[17] See *Haynes v. State*, 269 Ga. 181, 183 (496 SE2d 721) (1998).

[18] See *Cox v. State*, 274 Ga. 204, 206 (553 SE2d 152) (2001).

[19] See *Jenkins v. State*, 270 Ga. 607, 609 (512 SE2d 269) (1999).

[20] See *Smith v. State*, 267 Ga. 372, 374 (477 SE2d 827) (1996); *Dennis v. State*, 263 Ga. 257, 258 (430 SE2d 742) (1993).

the charge, and based on the charges that were given, its omission was not clearly harmful and erroneous as a matter of law.[21]

(g) The trial court did not commit reversible error when it attempted to clarify the jury's continuing confusion regarding the crime of misuse of a firearm while hunting after repeatedly charging the jury correctly on the applicable statute, OCGA § 16-11-108.[22]

(h) The trial court did not err in recharging the jury on only the felony murder/misuse of a firearm counts, when those were the counts on which the jury had questions.[23]

*Judgment affirmed. All the Justices concur, except Sears, P. J., who dissents.*

SEARS, Presiding Justice, dissenting.

Because I conclude that circumstances surrounding Hines's commission of the status felony of possessing a firearm were not inherently dangerous within the meaning of our decision in *Ford v. State*,[24] I dissent to the majority's affirmance of Hines's conviction of felony murder.

In *Ford*, this Court held that for a felony to serve as the basis for a felony murder conviction, it had to be inherently dangerous by its very nature or had to be committed under circumstances creating a foreseeable risk of death.[25] We also held that the imputation of malice that justifies the felony murder rule is dependent on the "perpetrator's life-threatening state of mind accompanying [the] commission [of the underlying felony]."[26] In *Ford*, however, we did not specify how to determine whether a particular felony, either by its nature or as it was committed, was inherently dangerous to human life. Because of the severe punishments that accompany a conviction of murder[27] and because it is illogical to impute malice for purposes of felony murder " ' "from the intent to commit a felony not [foreseeably] dangerous to human life," ' "[28] I conclude that for purposes of our felony-murder doctrine, a felony is inherently dangerous per se or as committed if it carries " 'a high probability' that [a human] death will result."[29] This

---

[21] See *Camphor v. State*, 272 Ga. 408, 413-414 (529 SE2d 121) (2000).

[22] See *Willingham v. State*, 268 Ga. 64, 66 (485 SE2d 735) (1997).

[23] See *Duffie v. State*, 273 Ga. 314, 316 (540 SE2d 194) (2001) (when jury requests recharge on particular part of case, court in its discretion may recharge them in full or only upon the point requested).

[24] 262 Ga. 602 (423 SE2d 255) (1992).

[25] Id. at 603. Accord *Hulme v. State*, 273 Ga. 676, 678 (544 SE2d 138) (2001).

[26] *Ford*, 262 Ga. at 603.

[27] See Model Penal Code and Commentaries, Pt. II, § 210.2, p. 36 (Official Draft and Revised Comments 1980).

[28] *Ford*, 262 Ga. at 603, quoting *State v. Goodseal*, 553 P2d 279, 285 (Kan. 1976).

[29] *People v. Patterson*, 778 P2d 549, 558 (Cal. 1989). Accord *People v. Hansen*, 885 P2d 1022, 1026 (Cal. 1994).

standard will ensure that our felony murder rule is not inappropriately expanded by "reducing the seriousness of the act which a defendant must commit in order to be charged with murder."[30]

In the present case, I conclude that the possession of a firearm by Hines was not committed in a fashion that was inherently dangerous and that carried a high probability that death would result. The fact that Hines was hunting, a dangerous sport; the fact that he had been drinking before he went hunting; the fact that he was hunting at dusk; and the fact that he fired a shot when he knew other hunters were in the general area in which he was hunting may establish that Hines was negligent, but do not establish that his acts created a high probability that death to a human being would result, or that he had a "life-threatening state of mind."[31] Moreover, as for the fatal shot, Hines testified that he heard a turkey gobble, that he "saw it fan out," and that he then fired at the object. Even though Hines may not, as stated by the majority, have positively identified his target as a turkey, he had to make a split-second decision regarding his target and concluded, based on hearing a gobble and seeing something "fan out," that the object was a turkey. I cannot conclude that, under these circumstances, the failure of the hunter to identify his target beyond doubt carried a high probability that a human being would be killed or that he acted with a "life-threatening state of mind."[32]

The death in this case is clearly a tragic incident, and Hines's conduct before and after the shooting was reprehensible. But the sanction of life in prison for murder should be reserved for cases in which the defendant's moral failings warrant such punishment. Here, the application of the felony murder statute to Hines's actions punishes him more severely than his culpability merits. In this regard, Hines will be serving the same punishment — life in prison — as an arsonist convicted of felony murder who firebombed an apartment that he knew was occupied, causing the death of two young children,[33] and the same punishment as an armed robber convicted of felony murder who entered a store with a firearm and shot and killed a store employee.[34] This result is unwarranted and unnecessary, as Hines could be prosecuted and convicted of an appropriate

---

[30] *Patterson*, 778 P2d at 558.

[31] *Ford*, 262 Ga. at 603.

[32] Id. See also *Cable v. Commonwealth*, 415 SE2d 218 (Va. 1992) (under circumstances similar to present case, defendant was convicted of involuntary manslaughter; his conviction was affirmed on appeal, but the dissent, taking the position that no crime had been committed, noted that the Supreme Court of Virginia had only decided one other case (also an involuntary manslaughter case) dealing with hunting accidents).

[33] *Wolfe v. State*, 273 Ga. 670 (544 SE2d 148) (2001).

[34] *Taylor v. State*, 275 Ga. 461 (569 SE2d 520) (2002).

lesser crime, such as involuntary manslaughter[35] or the misuse of a firearm while hunting.[36]

One final note. Hunting is a time-honored recreational activity encouraged by the State of Georgia and enjoyed by many of our State's citizens. No doubt a number of hunters have probably engaged in negligent hunting practices similar to those in this case. Although I do not condone such careless practices, neither can I agree with subjecting so many hunters to the possibility of spending life in prison when they do not fastidiously follow proper hunting procedures and accidentally shoot a fellow hunter.

For the foregoing reasons, I dissent to the majority opinion.

DECIDED MARCH 27, 2003 —
RECONSIDERATION DENIED APRIL 11, 2003.

*Larry B. Hill*, for appellant.

*Herbert E. Franklin, Jr.*, District Attorney, *Thurbert E. Baker*, Attorney General, *Jill M. Zubler*, Assistant Attorney General, for appellee.

---

[35] OCGA § 16-5-3.
[36] OCGA § 16-11-108. Hines was in fact convicted of this crime in the present case.