### A98A1466. LIVERY v. THE STATE.
### A98A1467. CLOUD v. THE STATE.
(506 SE2d 165)

BLACKBURN, Judge.

Thomas Jerome Livery and Richard Dean Cloud appeal their convictions of armed robbery following a jury trial. We affirm the convictions.

1. In their first and second enumerations of error, they contend that the evidence was insufficient to support the verdicts of armed robbery against them and that such verdicts were contrary to the law.[1] We disagree.

---

[1] Although Livery was also convicted of driving under the influence of a controlled substance and driving under the influence of marijuana, he makes no argument that these convictions were not supported by the evidence. Nevertheless, a review of the record shows that such convictions were amply supported by the evidence under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

"On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Livery and Cloud] no longer enjoy[ ] a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. . . . The standard for reviewing [an appeal based on insufficiency of the evidence] is whether under the rule of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that the defendant was guilty of the charged offense." (Punctuation omitted.) *Lester v. State*, 226 Ga. App. 373, 376 (2) (487 SE2d 25) (1997).

The record reveals that Valerie Robinson was working as a clerk at a Circle K convenience store at 10:45 p.m., February 12, 1996, when Cloud, wearing a dark sweatshirt, entered the store and robbed it. Cloud took several packs of cigarettes, $20 from the store safe, and $200 from Robinson. During the robbery, Cloud was carrying nunchucks. The nunchucks carried by Cloud consisted of two wooden sticks connected by a metal chain. At one point during the robbery, Cloud raised them in his hands, and Robinson feared that Cloud was going to strike her with them.

During the early morning hours of February 13, 1997, Officer Rad Porter was on duty when a vehicle driven by Livery and occupied by Cloud drove past him on the wrong side of the road, almost hitting him and another officer on the scene. Porter stopped the vehicle, and he smelled marijuana on Livery and inside the vehicle. Livery told Porter that he had smoked both crack and marijuana prior to being pulled over. Porter then performed a horizontal gaze nystagmus test on Livery, which he failed. After Livery failed a field sobriety test, Porter placed him under arrest for driving on the wrong side of the road. Livery voluntarily submitted to a urine test, which was positive for marijuana and cocaine.

While Livery was being arrested, Porter received a police transmission regarding the Circle K robbery. A lookout was broadcast for a male wearing a dark, hooded sweatshirt and carrying nunchucks. A search of Livery's car revealed these items as well as several packs of cigarettes, the lot numbers of which were later determined to match the lot numbers of the cigarette packs sold at the Circle K. After these objects were found, Cloud attempted to flee, but was apprehended.

Livery then told Porter that he and Cloud had used the proceeds from the Circle K robbery to purchase crack. Cloud was identified by Robinson as the robber. Livery told Officer Porter that he had driven Cloud to the Circle K with the intent to rob it.

Both defendants contend that the State failed to prove that nunchucks are an offensive weapon, and, therefore, there was no evi-

dence to support a required element of the armed robbery charges against them. This contention is without merit.

"The term offensive weapon . . . includes not only weapons which are offensive per se (such as firearms loaded with live ammunition), but also other instrumentalities not normally considered to be offensive weapons per se which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use. An offensive weapon is a weapon primarily meant and adapted for attack and infliction of injury, but practically the term includes anything that would come within the description of a deadly or dangerous weapon." (Punctuation omitted.) *Meminger v. State*, 160 Ga. App. 509 (2) (287 SE2d 296) (1981). "Examples of normally non-offensive non-deadly objects which have been used in a manner as to support convictions of armed robbery or aggravated assault are: a beer bottle, *Simmons v. State*, 149 Ga. App. 830 (2) (256 SE2d 79) (1979); a ceramic statue, *Banks v. State*, 169 Ga. App. 571 (314 SE2d 235) (1984); a pocketknife, *Hambrick v. State*, 174 Ga. App. 444 (1) (330 SE2d 383) (1985); fists, *Quarles v. State*, 130 Ga. App. 756 (204 SE2d 467) (1974); and even a pillow and sheets, *Eady v. State*, 182 Ga. App. 293, 295 (355 SE2d 778) (1987)." *Vicks v. State*, 189 Ga. App. 835, 836 (377 SE2d 863) (1989).

In this case, the nunchucks were admitted into evidence, and Robinson testified that Cloud raised them in his hands as if preparing to strike her in the head with them. Nunchucks, by definition, are tools developed for combat. Indeed, the Georgia Code defines them as weapons, categorizing them along with pistols, knives, and other such devices. OCGA § 16-11-127.1 (a) (2) (prohibiting weapons on school property). The evidence supported the determination that nunchucks may be an offensive weapon. Therefore, under the standard of *Jackson v. Virginia*, supra, the evidence was sufficient to enable a rational trier of fact to find both defendants guilty of armed robbery beyond a reasonable doubt.

Both defendants, in part, argue that the trial court's charge regarding the definition of offensive weapon was too limited. The trial court charged: "An offensive weapon is one which if used in its usual manner is likely to cause death." Even if this definition were too limited, the limitation operated to the benefit of the defendants. Therefore, as the trial court's charge worked to the defendants' advantage, any error would be harmless.

2. In their third enumeration of error, both defendants contend that the trial court erroneously prevented Livery from demonstrating the usual and customary use of nunchucks to the jury. The transcript reveals that Livery was asked whether he had any training or knowledge of the martial arts, and Livery replied that he did not. Livery was then asked: "[W]ould you be capable of demonstrating to the jury

how nunchucks are used?" Livery replied: "Oh, I could probably use them." At this point the State objected on the basis that Livery had no experience or training in using nunchucks. In response, Livery's attorney stated: "I'm following up and I'm expecting [Livery] to say no [to the question of whether he could demonstrate the nunchucks' use]." Furthermore, Livery provided the trial court with no explanation as to why he wished to demonstrate his knowledge of the use of nunchucks either before or after the State's objection. The admission of evidence is largely in the sound discretion of the trial court, and, absent an abuse of such discretion, an appellate court will not interfere. *Brannen v. Prince*, 204 Ga. App. 866, 870 (4) (421 SE2d 76) (1992). Livery provided the trial court with no foundation showing either (1) that Livery had actual knowledge of the use of nunchucks or (2) why such information would be relevant. Therefore, the trial court did not abuse its discretion in excluding Livery's demonstration of the nunchucks to the jury under these facts.

3. In their fourth enumeration of error, both defendants contend that the trial court erred by failing to charge the jury on the law of circumstantial evidence pursuant to OCGA § 24-4-6.

The failure to charge on circumstantial evidence as set forth in OCGA § 24-4-6 is not harmful or erroneous as a matter of law where there is some direct evidence and the jury is properly charged on reasonable doubt, absent a request for such charge. Accordingly, when the State's case includes both direct and circumstantial evidence, a defendant is not relieved of the necessity of requesting the charge and, in the absence of such a request, it is not error to fail to give it. See *Yarn v. State*, 265 Ga. 787 (1) (462 SE2d 359) (1995).

Cloud requested a charge on circumstantial evidence. Since the State's case against him consisted of both direct and circumstantial evidence, the trial court erred in failing to give the requested charge. However, as indicated in *Mims v. State*, 264 Ga. 271, 273 (443 SE2d 845) (1994), this error is not automatically harmful. Although the error was considered harmful in *Mims* because the evidence was close, the error in this case was rendered harmless by the overwhelming direct evidence of Cloud's guilt, including his positive identification by Robinson, the discovery of the sweatshirt, nunchucks, and cigarettes in his car, and the statements made by Livery regarding the planned robbery. "This evidence and all reasonable deductions therefrom were completely inconsistent with a reasonable hypothesis of innocence. To reverse this conviction would be a perversion of justice." (Punctuation omitted.) *Cornish v. State*, 219 Ga. App. 884, 885 (1) (466 SE2d 919) (1996).

Livery, on the other hand, did not request a charge on circumstantial evidence. In the absence of such a request, it was not error for the trial court to fail to give it with regard to Livery. *Yarn*, supra.

See also *Valdez-Hardin v. State*, 201 Ga. App. 126 (410 SE2d 354) (1991) (appellant could not orally adopt other co-defendant's request to charge where appellant neither requested charge in writing nor objected to trial court's denial of co-defendant's request). Moreover, even if Livery had properly requested a charge on circumstantial evidence, any error by the court in failing to so charge the jury would have been harmless for the reasons outlined above and in light of Livery's confessions regarding his participation in the armed robbery.

4. Livery contends that the trial court erred in failing to charge theft by taking as a lesser included offense of armed robbery. Livery, however, made no written request for this charge. "A trial judge never errs in failing to include a charge on a lesser included offense unless there is a written request to charge." (Punctuation omitted.) *Valdez-Hardin*, supra.

5. Livery contends that the trial court's charges on reasonable doubt were flawed because the trial judge did not repeat, when instructing the jury as to how to fill out the verdict form with respect to Livery, that the jurors would have a duty to acquit him if they had a reasonable doubt of his guilt. Jury instructions must be considered as a whole to determine whether a charge was erroneous. *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987). Prior to the instructions complained of by Livery, the trial court clearly and completely instructed the jury with regard to the defendants' presumption of innocence, the State's burden of proof, and the jury's duty to acquit if reasonable doubt existed. As such, we find no error in the charge to the jury, when considered as a whole.

*Judgments affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED AUGUST 14, 1998.

*Lloyd J. Matthews*, for appellant (case no. A98A1466).

*Chapman & Pope, Daniel C. Chapman III*, for appellant (case no. A98A1467).

*Tommy K. Floyd, District Attorney, Sandra A. Graves, Assistant District Attorney*, for appellee.