A98A2279. GOUGH v. THE STATE.
(512 SE2d 682)

BLACKBURN, Judge.

Eugene Gough appeals his convictions for aggravated assault and burglary, following a jury trial, contending: (1) that the evidence was insufficient to support the convictions; (2) that the trial court erred by allowing a written statement of his alleged victim to be used as a "continuing witness" by the jury during deliberations; and (3) that the trial court erred by giving an overbroad instruction on the law of aggravated assault. For the reasons set forth below, we affirm.

1. "On appeal the evidence must be viewed in the light most favorable to support the verdict, and [Gough] no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. The . . . verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Punctuation omitted.) *Kovacs v. State*, 227 Ga. App. 870 (1) (490 SE2d 539) (1997). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence shows that Gough arrived at the home of his ex-girlfriend, Jacqueline Habersham, at approximately 11:00 p.m. on

February 6, 1997.[1] Gough testified that he was angry with Habersham and wanted to confront her about accusations that she had made that he had stolen her food stamps and set fire to her home.[2] Gough also testified that he was mad at Habersham because he believed that she had not been sending their daughter to school on a regular basis.

Habersham refused to allow Gough into her home, so he kicked her door down and entered forcibly. Once inside, Gough immediately started to argue with Habersham. At that time, Michael White, another ex-boyfriend of Habersham, briefly stopped by, saw that the door had been kicked in, and left to call the police. Enraged, Gough picked up a hammer and struck Habersham in the head. Two of Habersham's children witnessed the assault. Habersham fled into her kitchen where Gough also picked up a knife. Moments later, Officer Scott Connolly arrived at the home, and he witnessed Gough holding Habersham in a headlock and striking her with the hammer. Seeing the police officer, Gough dropped his weapons and fled the scene.

This evidence is more than ample to support Gough's conviction for aggravated assault. Gough's claim that he struck Habersham with the hammer only by accident does not change this result, as the jury had testimony from several witnesses that the act was intentional. The evidence is also sufficient to support Gough's conviction for burglary despite Gough's argument that he had no intent to commit a felony in Habersham's home when he forced entry therein. Although Gough claims that he went to Habersham's home merely to talk with her, by his own admission, he was angry with Habersham and he wished to confront her, so much so that he invaded her home by kicking the door down. The jury was authorized to believe that, in his enraged state, Gough intended to harm Habersham, thereby supporting the charge of burglary.

2. Gough contends that his convictions must be reversed because a written statement made by Habersham to the police was allowed to go out with the jury despite the fact that Habersham was present to testify at trial. Specifically, Gough contends that such written testimony violated Georgia's continuing witness rule.

"In Georgia the 'continuing witness' objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on

---

[1] Just hours earlier, Officer Scott Connolly, responding to a domestic disturbance call, had found Gough at Habersham's house and instructed him to stay away.

[2] Gough was tried for arson in a prior trial, but a jury found that he was not guilty of the crime.

written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once." (Punctuation omitted.) *Hinton v. State*, 233 Ga. App. 213 (1) (504 SE2d 49) (1998).

Habersham's statement was initially referred to during trial by Gough's attorney, who used the document to impeach Habersham's previous testimony. Subsequently, the State sought to introduce the entirety of the statement into evidence pursuant to OCGA § 24-2-4 which provides: "Where either party introduces part of a document or record, the opposite party may read so much of the document as is relevant." The trial court then admitted the statement over a continuing witness objection made by Gough.[3]

It was inappropriate for the trial court to have allowed Habersham's statement to go out with the jury under these circumstances. Habersham was available to testify and did so. The sending to the jury of her statement violates the continuing witness rule under these facts. However, a judgment need not be reversed unless error is harmful. To the extent that the evidence contained in the statement was also brought out during trial and the evidence of Gough's guilt was overwhelming, no harm resulted from this error. See, e.g., *Hinton*, supra; *Johnson v. State*, 234 Ga. App. 58, 59 (2) (506 SE2d 212) (1998).

Habersham's statement, however, also contained evidence not specifically elicited during trial testimony. Although Habersham's statement indicated that she had accused Gough of committing arson in her home prior to the assault, Gough, in his own testimony during trial, explained that he went to Habersham's house because: "[he] wanted to give her the food stamps . . . and to go ahead and finish talking to her, because after the police came in — after the police got there, right, [Habersham] told them that [he] did something to her house while she was in Waynesboro. . . . And it was a very serious thing what [Habersham] had said." As such, Gough, himself, placed evidence before the jury that Habersham had accused him of a serious crime against her home.

Evidence contained in the statement that Gough expressed his desire to have sex with Habersham while entering her home, although more troubling, is also harmless under the facts of this case. As discussed above, the evidence regarding Gough's assault of Habersham was compelling, and, based on Gough's own admissions, the evidence supporting his burglary conviction was equally forceful. Although Gough contends that he was prejudiced by this evidence

---

[3] After the statement's admission, Gough argued that the document contained hearsay. However, by failing to raise this objection at the time of the document's admission, Gough waived this argument.

because the jury could have concluded that he intended to rape Habersham upon entering her home, no allegation of rape was made during trial. Instead, all of the evidence introduced with regard to the burglary charge indicated only that Gough intended to cause Habersham serious bodily injury.

As the evidence in this case is clear and overwhelming, it is highly probable that the error of allowing the victim's statement to go to the jury did not contribute to the verdict. See *Hinton*, supra at 214.

3. Although Gough was indicted for aggravated assault by use of a deadly weapon with intent to cause serious bodily injury, the trial court, in its instructions to the jury, recited the entirety of the applicable Code section, including the intent to murder, rape, or rob as alternative means of committing aggravated assault. However, at the beginning of its charge, the trial court read the indictment to the jurors which specifically alleged that assault with a deadly weapon was charged. As such, the giving of the entire Code section on the law of aggravated assault did not mislead the jury as Gough contends, although the better practice would have been to limit the instruction to the contended acts. *Thomas v. State*, 268 Ga. 135, 141 (17) (485 SE2d 783) (1997).

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 19, 1999.

*Lawrence D. Galehouse, Jeffrey S. Bowman, Peter D. Johnson*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

