## A01A0828. DURRANCE v. THE STATE.
(549 SE2d 406)

MIKELL, Judge.

Johnny Durrance was charged in a thirteen-count indictment with five counts of aggravated assault (Counts 1, 2, 4, 6, and 8), four counts of felony obstruction of an officer (Counts 3, 5, 7, and 9), fleeing and attempting to elude (Count 10), habitual violator (Count 11), battery (Count 12), and arson (Count 13). The trial court directed a verdict of acquittal on Counts 6, 7, and 13 and entered an order of nolle prosequi on Count 11. The jury was presented with a redacted indictment containing the remaining nine counts, and it returned a guilty verdict on all counts. The trial court subsequently merged Counts 1 and 3 with Count 2, Count 5 with Count 4, and Count 9 with Count 8. Durrance was then sentenced to serve fifteen years for each of the three aggravated assaults (Counts 2, 4, and 8), in addition to twelve months for each of the two misdemeanors. This appeal followed the denial of Durrance's motion for new trial. Finding no reversible error, we affirm.

1. In his first enumeration of error, Durrance contends that he was unfairly prejudiced in the eyes of the jury by the redacted indictment, which, he alleges, contained "unfounded" charges that were ultimately merged. However, the record reveals that Durrance failed to object to the presentation of the redacted indictment to the jury. "Objections presented for the first time on appeal furnish nothing for us to review, for this court is a court for correction of errors of law committed by the trial court where proper exception is taken."[1] Consequently, this enumeration presents nothing for decision on appeal.

2. Durrance next challenges the sufficiency of the evidence to support his convictions of aggravated assault. On appeal of a criminal conviction, we view the evidence in the light most favorable to support the verdict, and the defendant is no longer entitled to a presumption of innocence. We do not weigh the evidence or decide witness credibility, but simply determine whether the evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of the crimes charged.[2] Conflicts in the testimony of the witnesses are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the state's case, the jury's verdict will be upheld.[3]

So viewed, the evidence shows that on July 9, 1999, Linda Giv-

---

[1] (Punctuation omitted.) *Sparks v. State*, 232 Ga. App. 179, 182 (3) (a) (501 SE2d 562) (1998).

[2] *Horne v. State*, 237 Ga. App. 844-845 (1) (517 SE2d 74) (1999).

[3] *Ringo v. State*, 236 Ga. App. 38, 39 (510 SE2d 893) (1999).

ens called 911 to summon assistance to the home she shared with Durrance. The two had gotten into an argument, and Durrance, who was drunk, had slapped Givens twice. Givens also testified that Durrance had inadvertently set the bed on fire. Two Ware County deputy sheriffs, Sergeant Juan C. Spencer and Jimmy Clark, responded to the domestic disturbance call. Durrance left before they arrived. While the officers were conducting their investigation, Durrance drove by the house, and Clark, followed by Sgt. Spencer, gave chase. Ultimately, Durrance stopped at a traffic light and exited his truck. Deputy Clark testified that when he asked Durrance to approach Clark's vehicle, Durrance replied, "F-you," jumped back into his truck, and fled. The deputies radioed for additional officers and pursued Durrance. Deputies Danny Fullard and Tommy Allen and Georgia State Patrol Troopers Jeffrey A. Thomas and Mike Walker joined in the pursuit.

Sgt. Spencer and Deputy Clark, who were following each other, testified that when Durrance reached the Emerson Park area, Durrance turned around and sped toward them in their lane of traffic, forcing the officers to drive their patrol cars off the road and into a ditch to avoid being hit by Durrance. The deputies recovered their vehicles and continued their pursuit.

Deputy Fullard testified that during the high-speed chase, Durrance turned his truck around and Fullard tried to block him in. Durrance accelerated directly toward Fullard, who testified that he had to throw his car in reverse to get out of Durrance's way. Trooper Walker testified that the officers tried to stop Durrance's truck by using a maneuver called the precision immobilization technique, but Durrance struck Walker's vehicle and accelerated. Finally, Durrance wrecked his truck and ran. Walker apprehended Durrance and arrested him.

Durrance testified that he never intended to strike the officers' vehicles; rather, he was merely trying to flee. Durrance thus contends that the state failed to prove beyond a reasonable doubt that he had a specific intent to injure the officers, and he enumerates as error the trial court's denial of his motion for a directed verdict.

Contrary to Durrance's argument, the state was required to prove only a general intent to injure.[4] Pursuant to OCGA § 16-5-21 (a) (2), an assault becomes aggravated when it is committed "with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." Aggravated assault committed by means of a deadly or offensive weapon, unlike aggravated assault committed with the intent to

---

[4] *Cline v. State*, 199 Ga. App. 532, 533-534 (405 SE2d 524) (1991).

murder, rape, or rob, does not require a specific criminal intent.[5] Although an automobile is not per se a deadly or offensive weapon, it may become one depending on the manner and means by which the vehicle is used.[6] The question of whether an automobile has been used in such a manner so as to constitute a deadly or offensive weapon is one for the jury to resolve.[7]

The evidence in the instant case, including Durrance's own testimony that he had crossed the centerline and was speeding, was sufficient to enable any rational trier of fact to find beyond a reasonable doubt that he possessed the requisite criminal intent to commit aggravated assault.[8]

3. In his final enumeration of error, Durrance asserts that the trial court erred in refusing to give his orally requested charge on simple assault as a lesser included offense of aggravated assault. However, absent a written request to charge, the failure to instruct the jury on a lesser included offense is not error.[9] As Durrance failed to submit a written request, this enumeration is meritless.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED APRIL 24, 2001 —
RECONSIDERATION DENIED JUNE 25, 2001 — ▮▮▮▮▮▮

*Martin H. Eaves*, for appellant.
Johnny Durrance, *pro se.*
*Richard E. Currie, District Attorney*, for appellee.

---

[5] Id. at 533.
[6] *Blalock v. State*, 165 Ga. App. 269, 270 (299 SE2d 753) (1983).
[7] *Banks v. State*, 169 Ga. App. 571, 572 (314 SE2d 235) (1984); *Quarles v. State*, 130 Ga. App. 756 (2) (204 SE2d 467) (1974).
[8] *Cline*, supra. See also *Anderson v. State*, 254 Ga. 470, 472 (2) (330 SE2d 592) (1985); *Reynolds v. State*, 234 Ga. App. 884, 885-886 (1) (b) (508 SE2d 674) (1998).
[9] *Hawkins v. State*, 267 Ga. 124, 125 (3) (475 SE2d 625) (1996).