A04A1548. LEWIS v. THE STATE.
(603 SE2d 492)

MIKELL, Judge.

Corey Mack Lewis was charged with two felonies, aggravated assault and possession of a firearm by a convicted felon, and with four misdemeanor offenses. Lewis pled guilty to the four misdemeanor counts, and the trial court directed a verdict of acquittal on the felony possession of a firearm charge. He was convicted by a jury of aggravated assault. On appeal, he argues that the trial court erred in its charge to the jury by improperly commenting on the evidence and by refusing to give an instruction on witness competency. We affirm the conviction.

Viewed in a light most favorable to the jury's verdict, the record shows that on May 11, 2002, Lewis agreed to pay Donald Arnold five dollars to wash his automobile at a Marietta car wash. Arnold washed the car, but Lewis refused to pay him. Arnold testified that later in the day Lewis returned to the car wash, threatened him, and eventually cut Arnold's hands and face, requiring approximately 60 stitches. In the course of their investigation, the police posted a lookout for Lewis's vehicle. Eleven days after the alleged assault took place, an officer found the car parked and watched it until two people got in it and drove away. When the officer followed the car, the driver, Lewis, sped up, ran four stop signs, drove the wrong way on a one-way street, and finally wrecked the car. Lewis then exited the car and fled on foot but was tracked down by a canine officer. Upon arrest, Lewis explained that he fled because he was scared. The four misdemeanor counts and the felony firearm possession count all arose from the events that occurred eleven days after the alleged assault. The assault conviction is the only one on appeal.

Lewis enumerates two errors, both involving the court's instruction to the jury. Generally, the standard used in reviewing a trial court's jury charge is whether the charge, viewed as a whole, fully and fairly instructed the jury on the law of the case. *Watkins v. State*, 265 Ga. App. 54 (592 SE2d 868) (2004).

1. First, Lewis assigns error to the following charge on intent:

I charge you that the evidence of a defendant's conduct before, during and after the crime may be considered in determining whether a defendant is concerned in the commission of the crime. Conduct before and after the offense are circumstances from which one's criminal intent may be inferred.

Lewis argues that in this charge, the trial court expressed its opinion that his flight was evidence of guilt and thereby improperly shifted the burden of proof to the defense. He cites OCGA § 16-2-6, which provides, in pertinent part, that a trier of fact may consider "words, conduct, . . . and all other circumstances *connected with the act* for which the accused is prosecuted" (emphasis supplied) when determining criminal intent. Lewis argues that this language should prohibit the jury from considering evidence of other events, including his flight from the police and the misdemeanor counts, in determining his guilt on the assault charge, because it was not conduct connected with the act of aggravated assault.

In *Renner v. State*, 260 Ga. 515 (397 SE2d 683) (1990), the Supreme Court found error in a jury charge which instructed the jury that it could specifically consider evidence of the defendant's flight in determining guilt. Id. at 517-518 (3) (b). Citing the concurrence of Justice Bell in *Cameron v. State*, 256 Ga. 225, 227 (345 SE2d 575) (1986), the Court in *Renner* adopted the rule that this kind of charge "inevitably carries with it the potential of being interpreted by the jury as an intimation of opinion by the court that there is evidence of flight and that the circumstances of flight imply the guilt of the defendant." *Renner*, supra at 518. Significantly, however, the jury charge in *Renner* followed a pattern jury instruction that specifically mentioned flight in the charge, but the charge in the case sub judice makes no such mention of flight. Further, while the rule prohibits the court from instructing the jury on flight, the state may offer evidence of flight to be considered alongside other evidence to determine guilt, even if the flight is connected to a separate crime. See *Fulford v. State*, 221 Ga. 257, 258 (2) (144 SE2d 370) (1965). "It would place upon the State an impossible burden to prove that one charged with multiple violations of the law fled solely because of his consciousness that he committed one particular crime." Id.

Lewis also contends that the instruction at issue shifted the burden of proof to the defendant in violation of our Supreme Court's decision in *Bridges v. State*, 268 Ga. 700 (492 SE2d 877) (1997), which reiterated the rule from *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979). The erroneous instruction in *Sandstrom* read, in pertinent part, "the law presumes that a person intends the ordinary consequences of his voluntary acts." (Punctuation omitted.)

Id. at 513 (I). The erroneous charge in *Bridges* contained two mandatory presumptions about the intent to kill which the Court found shifted the burden of proof to the defendants. *Bridges*, supra at 706 (2) (f). These instructions, however, are also distinguishable from this case, since the charge in question here contained no mention of a presumption of intent or any language suggesting a shift in the burden of proof. In fact, the trial court stated clearly in the charge that "[t]here is no burden of proof upon the Defendant whatever [sic], and the burden never shifts to the Defendant to prove innocence." The court explained further in the charge that "[i]ntent is an essential element of any crime. It must be proved by the State beyond a reasonable doubt." Viewing the instruction in question together with the whole charge, we find no error on the part of the trial court in giving this instruction to the jury.

2. Lewis also contends that the trial court erred in refusing to instruct the jurors that they could test a witness's credibility with evidence of his mental instability and its possible interference with his ability to understand the nature of the oath. The instruction requested by Lewis reads:

> Persons who have not the use of reason or who do not understand the nature of an oath, shall be incompetent witnesses. Where a person is once adjudged to be insane, such insanity is presumed to continue, and the burden is upon those questioning the existence of such lunacy or insanity to prove sanity beyond a reasonable doubt.

Competency of witnesses is a question of law for the courts to decide, while credibility is a fact issue for the jury. OCGA § 24-9-7 (a). The source for the language in the requested charge was from a jury charge given in *Bonner v. State*, 59 Ga. App. 737 (1 SE2d 768) (1939). However, in *Bonner* the Court found almost identical language to be improper because it was more favorable to the defendant in allowing the jury to declare a witness incompetent. Id. Because the competency of a witness is a question of law to be determined by the courts, the trial court did not err in refusing to give this instruction to the jury. It is not error for a trial court to refuse to give a requested charge "that is not legally accurate and adjusted to the evidence." (Punctuation and footnote omitted.) *Nails v. Rebhan*, 246 Ga. App. 19, 21 (2) (538 SE2d 843) (2000).

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 11, 2004.

*Mary Erickson*, for appellant.

*Patrick H. Head, District Attorney, Amy H. McChesney, Irvan A. Pearlberg, Assistant District Attorneys*, for appellee.