S09A1713. SHIVERS v. THE STATE.

(688 SE2d 622)

THOMPSON, Justice.

Tony Shivers was found guilty by a jury of felony murder and other offenses in connection with the shooting death of Allen Kilgore.[1] Shivers appeals from the denial of his motion for new trial, claiming that the jury instruction was defective in two respects. Finding no error, we affirm.

---

[1] The crimes were committed on January 15, 2006. An indictment was returned on June 5, 2006, charging Shivers with malice murder; felony murder while in the commission of an aggravated assault; felony murder while in the commission of the offense of possession of a firearm by a convicted felon; aggravated assault; and possession of a firearm by a convicted felon. Trial commenced on December 18, 2006, and on December 21, 2006, a jury found Shivers guilty of voluntary manslaughter, felony murder (two counts), aggravated assault, and possession of a firearm by a convicted felon. He was sentenced on January 5, 2007, to life imprisonment for felony murder while in commission of the offense of possession of a firearm by a convicted felon. The remaining counts were either vacated by operation of law or merged for purposes of sentencing. See *Malcolm v. State*, 263 Ga. 369 (5) (434 SE2d 479) (1993). Shivers filed a motion for new trial on February 2, 2007, which he amended on October 30, 2008. The motion for new trial as amended was denied on March 12, 2009. A motion for leave to file an out-of-time appeal was granted on May 28, 2009, and a notice of appeal was filed on June 1, 2009. The case was docketed in this Court on June 30, 2009, and was submitted for a decision on briefs on August 24, 2009.

Viewed in a light most favorable to the verdict, the evidence established that Shivers and several others had congregated at the victim's home to drink alcoholic beverages[2] and watch football. Shivers and the victim began arguing in the presence of several witnesses. Shivers left the house exclaiming to onlookers that he would kill the victim. About an hour later, several witnesses observed him return to the house, armed with a shotgun. Shivers, a previously convicted felon, entered the house and fired the weapon, killing the victim with a single gunshot to the chest in the presence of the victim's mother and brother. He then fled from the scene in a car.

At trial Shivers claimed that he acted in self-defense. He testified that after he argued with the victim, he walked out of the house and remained on the premises for about an hour; he reentered the house to purchase alcohol when he encountered the victim pointing a shotgun at him; Shivers then produced a shotgun which he had concealed during the evening under his clothing, shot the victim, and fled from the scene.

1. The evidence was sufficient for a rational trier of fact to reject Shivers' justification theory and to find him guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Lewis v. State*, 283 Ga. 191 (1) (657 SE2d 854) (2008).

2. Shivers asserts that the trial court erred in failing to specifically charge the jury that self-defense may be a defense to the crime of possession of a firearm by a convicted felon.

In reviewing a challenge to the trial court's jury instruction, we view the charge as a whole to determine whether the jury was fully and fairly instructed on the law of the case. See *Spearman v. State*, 267 Ga. 600 (5) (481 SE2d 814) (1997). Here, the court gave an instruction on use of force in self-defense verbatim from the Suggested Pattern Jury Instructions, fully explaining the affirmative defense of justification and the burden on the State to disprove it beyond a reasonable doubt. There is no requirement that the court instruct the law of self-defense separately as to each of the various crimes alleged in the indictment. See generally *Holmes v. State*, 273 Ga. 644 (3) (543 SE2d 688) (2001). We conclude that the charge, when taken as a whole, adequately and fairly conveyed the correct legal principles concerning self-defense. See *Davenport v. State*, 283 Ga. 171 (3) (656 SE2d 844) (2008).

3. Shivers also claims that the trial court erred in refusing to give his requested jury charge drawn from *Ford v. State*, 262 Ga. 602, 603 (1) (423 SE2d 255) (1992), specifically that "[a] status felony,

---

[2] It was established that alcoholic beverages were being sold illegally on the premises.

including the possession of a firearm by a previously convicted felon, is not inherently dangerous." Ford, a convicted felon, accidentally discharged a firearm while attempting to unload it, unintentionally sending a bullet through the floor striking and killing a person in the apartment below. Ford was convicted in part of felony murder predicated on possession of a firearm by a convicted felon. On appeal, he argued that the evidence of the firearm possession was insufficient to support a felony murder conviction because he did not possess the weapon in a manner that was inherently dangerous or life threatening. The Court agreed, noting that the purpose of the felony murder statute is to "deter the commission of a dangerous or life-threatening felony" and the status offense in that case occurred under circumstances in which no assault or criminal conduct took place. Id. at 603. The Court also acknowledged that "circumstances may well exist under which such a felony may be considered dangerous." Id.

Unlike *Ford*, Shivers intentionally aimed and shot a loaded weapon at the victim (actually using a chair to position it) in a manner that was inherently dangerous. "A felony is inherently dangerous when it is dangerous per se or by its circumstances creates a foreseeable risk of death. [Cit.] Depending on the facts, possession of a firearm by a convicted felon can be an inherently dangerous felony." (Punctuation omitted.) *Hines v. State*, 276 Ga. 491, 493 (3) (578 SE2d 868) (2003). See also *Sapp v. State*, 284 Ga. 754 (670 SE2d 67) (2008); *Metts v. State*, 270 Ga. 481 (1) (511 SE2d 508) (1999) (status offense of being a convicted felon in possession of a firearm supports a felony murder conviction where defendant pointed a loaded, cocked gun at a window knowing there was a person on the other side). "In determining whether a felony meets that definition, [a] court does not consider the elements of the felony in the abstract, but instead considers the circumstances under which the felony was committed." *Mosley v. State*, 272 Ga. 881, 883 (3) (536 SE2d 150) (2000). As in *Metts*, supra at 482, "[a]ppellant's possession of the firearm was dangerous and life-threatening, and had 'an undeniable connection to the homicide.' "

"Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). It is not error for the trial court to refuse to give a requested charge that, " 'is not legally accurate and adjusted to the evidence.' " *Lewis v. State*, 269 Ga. App. 94, 96 (2) (603 SE2d 492) (2004). Shivers admitted that he deliberately used the weapon to shoot the victim, but claimed that he did so in self-defense. Thus, his use of the weapon under the circumstances "create[d] a foreseeable risk of death." (Punctuation omitted.) *Ford*, supra at 603. The only question was whether his conduct was

justified because he was acting in self-defense. In contrast to *Ford*, supra at 603, the evidence did not support a finding that the status felony occurred under circumstances in which "no assault or any other criminal conduct" took place. It follows that the requested charge was properly denied.

*Judgment affirmed. All the Justices concur, except Nahmias, J., who concurs specially as to Division 3.*


NAHMIAS, Justice, concurring specially.

I join Divisions 1 and 2 of the Court's opinion, but I concur only in the result as to Division 3. Bad facts, as they say, make bad law. But assuming we are to live with such law, we must apply it properly. I do not believe the majority opinion does so in Division 3.

1. In *Ford v. State*, 262 Ga. 602 (423 SE2d 255) (1992), this Court decided that "dangerousness is a prerequisite to the inclusion of a felony as an underlying felony under the felony murder statute of this state." Id. at 602. That statute, OCGA § 16-5-1, does not by its terms limit the type of felony that may qualify as a predicate for felony murder, instead stating simply, "[a] person also commits the offense of murder when, in the commission of *a felony*, he causes the death of another human being irrespective of malice." (Emphasis supplied.) The Court recognized that the felony murder statute "does not specify which felonies may predicate a felony murder conviction." 262 Ga. at 603. Nevertheless, the Court stated, "the statute is no more than a codification of the felony murder doctrine under the common law." Id. Noting that Georgia first enacted a felony murder statute in 1811, the Court concluded that the statute's "purpose is the same: to deter the commission of a dangerous or life-threatening felony." Id. at 603 & n. 2.

It is questionable whether there was a common-law felony murder doctrine in 1811. See Guyora Binder, *The Origins of American Felony Murder Rules*, 57 Stan. L. Rev. 59, 63 (arguing that "Americans did not receive any felony murder rules from England, for the simple reason that there was no common law felony murder rule at the time of the American Revolution"). Moreover, the development of Georgia's felony murder statute does not appear to support the *Ford* Court's assertion.[3]

---

[3] Although the *Ford* Court was technically correct in saying that the first felony murder statute was enacted in Georgia in 1811, see Ga. L. 1811, §§ 5, 25-26, pp. 28, 32-33, the 1811 felony murder legislation never went into effect, see *Chambers v. State*, 194 Ga. 773, 775 (22 SE2d 487) (1942) (explaining that operation of 1811 penal code was expressly conditioned on issuance of gubernatorial proclamation of completion of a suitable penitentiary, which was never issued, and 1811 penal code was repealed in 1818 without ever going into effect). The list of felonies was quite short in 1811, limited to homicide, arson, larceny, burglary, robbery, and

The *Ford* Court cited no case pre-dating the enactment of Georgia's statute, nor any Georgia case law at all, in support of its dubious reading of the unrestricted statutory language. To be sure, modern courts, like the one *Ford* cites in support of its conclusion, have held that it is "only rational" to limit the felony murder rule to a "felony that is dangerous per se, or 'which by the attendant circumstances, create(s) a foreseeable risk of death.' " Id. at 603 (quoting *Kansas v. Goodseal*, 553 P2d 279, 285 (1976), overruled by *Kansas v. Underwood*, 615 P2d 153, 163 (1980)). I question whether a court's view of what types of felonies are most rationally deterred can limit the broad language the General Assembly enacted. Never-

---

forgery. See Ga. L. 1811, § 24, p. 32. Rape, though not denominated a felony, could also support a conviction for felony murder. See Ga. L. 1811, § 5, p. 28.

The 1816 penal code, Ga. L. 1816, pp. 142-201, was also repealed in 1818, after being in effect for about two years. See *Chambers*, 194 Ga. at 775. Division 5, which covered crimes against the person, included the concept of felony murder. Section 1 provided that "[m]urder, is the killing of a human being with malice, express or implied," and § 2 stated that "[m]alice shall be implied where no considerable provocation appears, and where all the circumstances of the killing shew an abandoned and malignant heart. – The punishment of murder shall be death." Section 8 defined involuntary manslaughter as "the killing of a human being, without any intention to do so; but in the commission of an unlawful act, or a lawful act, which probably might produce such a consequence." The sentence for involuntary manslaughter was "confinement or labor, or solitude in the penitentiary, for a term not less than six months, and not longer than three years."

The 1817 penal code, Ga. L. 1817, pp. 92-143, made small changes to the definition of murder, providing that "[m]urder is the killing of a human being in the peace of the state, with malice aforethought, either express or implied." Ga. L. 1817, p. 95. The change to the definition of involuntary manslaughter was more significant. At the end of the definition of involuntary manslaughter contained in the 1816 penal code, the 1817 code added the following language: *"Provided always*, that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious or riotous intent, the offence shall be deemed and adjudged to be murder." Ga. L. 1817, p. 96. These definitions prevailed until 1833.

The 1833 penal code, Ga. L. 1833, pp. 143-217, further refined the definition of murder to "the unlawful killing of a human being in the peace of the State, by a person of sound memory and discretion, with malice aforethought, either express or implied." Ga. L. 1833, p. 148. It explained that "[m]alice shall be implied, where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart." Ga. L. 1833, p. 148. Significantly, it altered the involuntary manslaughter provision of the 1817 penal code as follows:

> *Provided* always, that where such involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a riotous intent, *or of a crime punishable by death or confinement in the penitentiary*, the offence shall be deemed and adjudged to be murder.

Ga. L. 1833, p. 148 (emphasis supplied). The 1833 amendment therefore specified that felony murder was not limited to cases where the defendant has committed an unlawful act that naturally tends to destroy human life, but instead extended to any crime punishable by death or confinement in the penitentiary, i.e., a felony. This is the language in the statutory development that is closest to the current statutory text. The *Ford* Court did not review any of this history, and the 1833 amendment tends to undercut its claim that Georgia's felony murder statute is simply meant to codify a more restricted common law rule.

theless, this holding of *Ford* is not outlandish, has some historical support, accords with the majority view nationally in recent years, and has not caused the General Assembly to revise this often-used criminal statute in the intervening 18 years, so I will follow it as stare decisis. See generally *Montejo v. Louisiana*, ___ U. S. ___ (129 SC 2079, 173 LE2d 955) (2009).

2. The *Ford* Court's application of that general holding to the specific felony at issue in that case — possession of a firearm by a previously convicted felon— is more dubious. The Court described that crime as a "status felony" and therefore declined to hold that it is "dangerous per se." 262 Ga. at 603. The "bad facts" of *Ford* may well have influenced that conclusion. Ford, a convicted felon, was unloading a pistol in his girlfriend's apartment when it accidentally discharged, firing a bullet through the floor, where it struck and killed the victim in the apartment below. Id. at 602. There was no evidence that Ford was aware of that apartment or the victim's presence in it, but he was nevertheless convicted of felony murder. Id. The case clearly did not involve the sort of evil conduct on which we more comfortably base murder convictions.

However, the Court's conclusion that possession of a firearm by a convicted felon is not "dangerous per se" because it is a "status felony" is based on a flawed premise. Possession of a firearm by a convicted felon is not a "status" offense in the way that term is normally used. To the contrary, "status" crimes are wholly unconstitutional, because they lack an "actus reus" — some act or behavior that society has an interest in preventing. See *Powell v. Texas*, 392 U. S. 514, 533 (88 SC 2145, 20 LE2d 1254) (1968) (plurality opinion). The paradigmatic example is the California law, struck down by the United States Supreme Court, that made it a criminal offense to "be addicted to the use of narcotics," even if the defendant had "never touched any narcotic drug within the State or been guilty of any irregular behavior there." *Robinson v. California*, 370 U. S. 660, 667 (82 SC 1417, 8 LE2d 758) (1962) (citation and punctuation omitted). A law that criminalized simply "being a chronic alcoholic" — as opposed to "being in public while drunk on a particular occasion" — would likewise be an unconstitutional status offense. *Powell*, 392 U. S. at 532 (plurality opinion). Thus, if possession of firearm by a convicted felon were truly a "status" offense, not only could it not serve as a predicate felony for a felony murder conviction, it could not be criminalized at all.

Possession of a firearm by a convicted felon is more akin to the crime of being in public while drunk on a particular occasion (a permissible non-status crime) than being a chronic alcoholic (an impermissible status crime). Ford was guilty of possession of a firearm by a convicted felon, not simply because of his *status* as a

convicted felon, but because, having that status, he *acted* to obtain and possess a firearm. Thus, the *Ford* Court's reasoning that possession of a firearm by a convicted felon is not "dangerous per se" because it is a "status felony" is unsound.

Furthermore, possession of a firearm by a convicted felon is, in my view, dangerous per se. Laws criminalizing firearms possession by felons exist precisely because legislatures have decided "to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm *without becoming a threat to society*." *Lewis v. United States*, 445 U. S. 55, 63 (100 SC 915, 63 LE2d 198) (1980) (citation and punctuation omitted; emphasis supplied) (interpreting analogous federal statute). The General Assembly views possession of a firearm by a convicted felon as so dangerous to public safety that it has affixed a penalty of one to five years in prison for doing so, even where possession does not result in injury to anyone at all. See OCGA § 16-11-131 (b). I would not second-guess the General Assembly's determination that it is inherently dangerous for a convicted felon to possess a gun.

Finally, unlike *Ford*'s general interpretation of the often-used felony murder statute, its very questionable application of that holding to one specific predicate felony, in a sympathetic factual scenario and in a manner that has not actually resulted in the reversal of other murder convictions, is unlikely to have been noticed and unlikely to be corrected legislatively. For these reasons, I would overrule *Ford*'s holding that the felony of possession of a firearm by a convicted felon is not dangerous per se, and would instead hold that a defendant who causes the death of another during the commission of that felony is guilty of felony murder.

However, not doing so will affect few, if any, cases, because whether or not this Court thinks that the crime is always dangerous, in virtually every instance in which the possession of a firearm by a convicted felon actually results in a homicide that a district attorney charges as felony murder, the "attendant circumstances" will make it clear that the crime "create[d] a foreseeable risk of death." *Ford*, 262 Ga. at 603 (citation and punctuation omitted). That may explain why, in the 17 years since *Ford* was decided, we have never seen a case with anything like its peculiar facts, but instead have affirmed every case in which possession of a firearm by a convicted felon was the predicate for a felony murder conviction. See *Sapp v. State*, 284 Ga. 754, 754-755 (670 SE2d 67) (2008); *Stephens v. State*, 279 Ga. 43, 44 (609 SE2d 344) (2005); *Hines v. State*, 276 Ga. 491, 493 (578 SE2d 868) (2003); *Metts v. State*, 270 Ga. 481, 482-483 (511 SE2d 508) (1999); *Roller v. State*, 265 Ga. 213, 214 (453 SE2d 740) (1995); *Sims v. State,* 265 Ga. 35, 35, n. 2 (453 SE2d 33) (1995).

3. If we are to treat *Ford* as good law, however, we should not

corrupt other legal doctrines in applying it. I believe the majority opinion does just that. It treats Shivers' claim as one of sufficiency of the evidence or a challenge to the trial court's finding that the evidence showed Shivers' possession of a firearm in this case to be inherently dangerous. That is indeed the type of challenge we have addressed in other post-*Ford* cases. See, e.g., *Stephens*, 279 Ga. at 44-45; *Raheem v. State*, 275 Ga. 87, 88-89 (560 SE2d 680) (2002), overruled in part by *Patel v. State*, 282 Ga. 412, 413, n. 2 (651 SE2d 55) (2007); *Roller*, 265 Ga. at 214. And treated that way, there is no question that the evidence showed that the "attendant circumstances" under which convicted felon Shivers illegally possessed his shotgun created a foreseeable risk of death.

But that is not the claim Shivers raised in the trial court and raises on appeal in this Court. Instead, he argues that he had a right to have the *jury,* rather than the *judge,* decide the *factual* issue created by *Ford* — whether the attendant circumstances of the predicate felony created a foreseeable risk of death — and he proposed a jury charge to that effect. The trial court denied the requested charge, saying that the question was one of law for the court. The trial court was wrong, and to the extent that the majority opinion appears to adopt that position, it is wrong too.

The Sixth Amendment, which protects the right to a jury trial in "all criminal prosecutions," U. S. Const. Amend. VI, "gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Gaudin*, 515 U. S. 506, 511 (115 SC 2310, 132 LE2d 444) (1995). The Due Process Clause of the Fourteenth Amendment, U. S. Const. Amend. XIV, § 1, protects a defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U. S. 358, 364 (90 SC 1068, 25 LE2d 368) (1970). Thus, "[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt." *Ring v. Arizona*, 536 U. S. 584, 602 (122 SC 2428, 153 LE2d 556) (2002).

This Court could decide that possession of a firearm by a convicted felon, when considered in the abstract, is a felony inherently dangerous to human life and safety based on the elements of the offense alone. In that case, no additional finding of fact would be necessary to support a conviction for felony murder based on that predicate offense. Evaluating the elements of an offense and deciding that it is "dangerous per se" — that is, dangerous in every case, as a matter of law — is a legal question that a court may decide. In *Ford* this Court concluded, however, that possession of a firearm by a convicted felon is *not* dangerous per se. Deciding whether a felony,

under all the "attendant circumstances" of a specific case, "created a foreseeable risk of death," is undoubtedly a question of fact that must be submitted to the jury.[4]

This issue has not been squarely addressed by this Court. However, in *Mosely v. State*, 272 Ga. 881 (536 SE2d 150) (2000), the Court reaffirmed *Ford*'s general holding that not all felonies are felony murder predicates, favorably citing *Rhode Island v. Stewart*, 663 A2d 912 (RI 1995), for its discussion of how the majority of states have adopted this approach. See 272 Ga. at 883, n. 8. And in *Stewart,* the Supreme Court of Rhode Island clearly explained that "[t]he proper procedure for making such a determination is to present the facts and circumstances of the particular case *to the trier of fact* and *for the trier of fact to determine* if a felony is inherently dangerous in the manner and the circumstances in which it was committed." 663 A2d at 920 (emphasis supplied). In that case, the appellate court found no error, because the trial court had so instructed the jury, which made the necessary finding in its guilty verdict. Id. The court then limited its review of that finding to sufficiency of the evidence. Id. That is how this case should have proceeded as well, but instead the trial court here denied Shivers' request that the issue be submitted to the jury through his proposed jury instruction, which accurately stated the law as set forth in *Ford*.

We use the correct approach in other areas. One example is in deciding whether different items constitute a "deadly weapon" for purposes of the statute prohibiting aggravated assault by use of a deadly weapon. OCGA § 16-5-21 (a) (2). We have decided that certain items — such as firearms, whether loaded or unloaded — always qualify as deadly weapons; because they are per se within the scope of the statute, the jury need not make that finding. See *Wyman v. State*, 278 Ga. 339, 341 (602 SE2d 619) (2004); *Adsitt v. State*, 248 Ga. 237, 240 (282 SE2d 305) (1981). But many other items are not deadly weapons per se. See, e.g., *Miller v. State*, 275 Ga. 730, 732 (571 SE2d 788) (2002) (hands and feet); *Pye v. State*, 274 Ga. 839, 841 (561 SE2d 109) (2002) (bottle); *Gough v. State*, 236 Ga. App. 568, 569 (512 SE2d 682) (1999) (hammer); *Banks v. State*, 169 Ga. App. 571, 571-572 (314 SE2d 235) (1984) (ceramic statue); *Talley v. State*, 137 Ga. App. 548, 550 (224 SE2d 455) (1976) (lamp); *Williams v. State*, 127 Ga. App. 386, 387-389 (193 SE2d 633) (1972) (shoes). For those items, the issue must be submitted to a properly instructed jury, and

---

[4] This is not to say that courts do not also evaluate that issue, as they do many similar issues. If, construing the evidence in favor of the State, no rational jury could make the requisite finding, the trial court should, on proper motion, grant a directed verdict of acquittal. This Court would also review the sufficiency of the evidence, under that same liberal standard, if the issue were raised on appeal.

the failure to do so is error. See, e.g., *Livery v. State*, 233 Ga. App. 882, 884 (506 SE2d 165) (1998) (" 'The term offensive weapon . . . includes not only weapons which are offensive per se (such as firearms loaded with live ammunition), but also other instrumentalities not normally considered to be offensive weapons per se which may be found by a jury to be likely to produce death or great bodily injury depending on the manner and means of their use.' " (citation omitted)); *Durrance v. State*, 250 Ga. App. 185, 186 (549 SE2d 406) (2001) ("Although an automobile is not per se a deadly or offensive weapon, it may become one depending on the manner and means by which the vehicle is used. The question of whether an automobile has been used in such a manner . . . is one for the jury to resolve." (footnote omitted)).

Consequently, assuming *Ford* remains good law, in my view the trial court erred in rejecting Shivers' proposed jury charge and instead holding, in its order denying the motion for new trial, that "[t]he issue in *Ford* and its progeny is a matter of law for the courts, not a matter of fact for the jury." Nevertheless, I concur in the judgment of the Court with respect to Division 3, because the error was harmless beyond a reasonable doubt. *See Neder v. United States*, 527 U. S. 1, 15 (119 SC 1827, 144 LE2d 35) (1999) (holding that "omission of an element is an error that is subject to harmless-error analysis"). Although Shivers claimed that he was justified in shooting the victim, there was no dispute that Shivers was a convicted felon who carried a loaded shotgun into a crowded home, pointed it at a group of people there, and then proceeded in search of the victim, with whom he had quarreled earlier, until he found the victim and had the fatal encounter. A rational jury could not have concluded anything but that Shivers' possession of a firearm under the circumstances of this case was dangerous and created a foreseeable risk of death.

DECIDED FEBRUARY 1, 2010.

*Phyllis R. Williams, Jimmonique R. S. Rodgers*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney, Thurbert E. Baker, Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.