## A11A0163. DURHAM v. THE STATE.
(710 SE2d 644)

MIKELL, Judge.

Travis Tyrone Durham, convicted by a Newton County jury of two counts of selling cocaine, appeals from the trial court's denial of his motion for new trial. Durham contends that introduction of the circumstances of his arrest on another charge was prejudicial; that crucial evidence was withheld regarding the informant in the case; and that his trial counsel rendered ineffective assistance in not filing a motion to suppress video of the two buys. Finding no harmful error, we affirm.

Construed in favor of the verdict, the evidence shows that, in early 2008, the Special Investigations Unit (SIU) of the Newton County Sheriff's Office was using confidential informants to purchase cocaine in the area. Aundray Hardeman was a confidential informant who was being paid $100 per buy by SIU. On February 22, 2008, SIU agents Charles Cook and Philip Bradford met with Hardeman, had him sign the paperwork involved,[1] searched him to ensure he had no weapons or drugs on him, and wired him with an audio/visual recorder. Hardeman was given a $20 bill which had been photocopied by SIU and was dropped off in the vicinity of Durham's house by agent Bradford. Hardeman walked to Durham's house, entered, and spoke to Durham, whom he called "Crack." Hardeman asked Durham for a "big fat 20," which is street slang for $20 worth of crack cocaine. Durham handed Hardeman the crack cocaine and Hardeman handed him the SIU-provided $20 bill. Hardeman then walked to a prearranged location, was picked up by agent Bradford, and taken to another location to meet agent Cook. There, Hardeman turned over the crack cocaine, which was logged into evidence, as well as the audio/visual equipment. Hardeman was searched again, with no weapons or contraband found.

On March 7, 2008, the same SIU process was followed and Hardeman was dropped off by agent Cook near Durham's home at 3:56 p.m. Hardeman met Durham outside the house and followed him inside. On this occasion, Durham obtained the crack cocaine from another man, later identified as Kevin Banks,[2] and then handed it to Hardeman, who then gave Durham the $20 bill.[3] Hardeman was picked up by agent Cook at 4:09 p.m.; the post-buy procedure was performed again; and the cocaine was given to agent Cook.[4]

---

[1] Hardeman signed an oral interceptor agreement (allowing the use of an audio/visual recorder), a hold harmless agreement, and a cooperation agreement with SIU.

[2] Banks was also convicted of sale of cocaine.

[3] Both of the rocks purchased by Hardeman tested positive for cocaine.

[4] The evidence was legally sufficient. *Wright v. State*, 302 Ga. App. 332 (690 SE2d 654) (2010).

1. Durham argues that he was denied a fair trial when the jury was allowed to hear "prejudicial evidence of an unrelated arrest occurring months after the charged offenses."

Durham's trial counsel made an oral motion in limine to exclude law enforcement officers from testifying about "other offenses that they may have suspected him of or arrested him for." Following the state's argument that evidence of flight would be admissible, Durham's trial counsel acknowledged that the fact that Durham had a bench warrant or failed to appear for a calendar call on the sale of cocaine charges would be admissible as flight. In November 2008, Durham had failed to appear for the calendar call on the cocaine sale charges. As a result of that failure to appear, a bench warrant was issued. The trial court denied Durham's motion and ruled that the circumstances of his later arrest for obstruction of, and giving false information to, an officer were admissible.

On January 3, 2009, Newton County Sheriff's Deputy Raymond Walden was dispatched on a suspicious person call. Upon arriving at the location, Walden observed a man, later identified as Durham, standing in the front yard of a residence wearing blue jeans and no shirt. Durham watched the officer as he drove up and, when Walden stopped his vehicle, Durham walked behind a tree. When Walden got out of his vehicle and asked Durham to step over toward him, Durham yelled at him and ran off. Walden chased Durham and, after a physical altercation, Walden captured and arrested Durham. When Walden took Durham to the jail for booking, another officer recognized Durham, who had given a false name and date of birth to Walden. At this point, Walden discovered that Durham also had an outstanding bench warrant for failure to appear on the cocaine charges. In February 2009, Durham pled guilty to obstruction of, and giving false information to, an officer, and a certified copy of this conviction was admitted at trial.

"Evidence as to whether a defendant tried to evade capture is admissible as evidence of flight. Furthermore, evidence of flight is relevant because a defendant's 'efforts to elude capture arguably provide circumstantial evidence of guilt.' "[5] This holds true even if the flight is connected to a separate crime.[6] "Further, evidence that the defendant forfeited his appearance bond [on the charge on trial] is admissible as tending to show flight."[7] Therefore, there was no

---

[5] (Citations and punctuation omitted.) *Evans v. State*, 288 Ga. 571, 574-575 (5) (707 SE2d 353) (2011).

[6] *Lewis v. State*, 269 Ga. App. 94, 95 (1) (603 SE2d 492) (2004).

[7] (Citations and punctuation omitted.) *Allen v. State*, 243 Ga. App. 730, 732 (3) (534 SE2d 190) (2000).

error in the trial court's denial of Durham's motion.[8]

2. Durham's second enumeration is that he was "[d]enied a fundamentally fair trial when the state withheld crucial impeachment evidence regarding the informant, its primary witness against appellant at trial."[9] It is not disputed that, prior to trial, the state made available to defense counsel all evidence then within the possession of the prosecutor and that the state had provided discovery prior to trial. During the testimony of agent Cook, Durham's trial counsel became aware of a file maintained by SIU on each confidential informant which had not been turned over to the state or defense. According to Cook, each file contained the forms signed by each informant, payment sheets, and a personal history sheet.

Trial counsel then moved for a mistrial "based on the fact that I just learned that the police or investigators have another file on this confidential informant." Following this motion, the trial court announced it would conduct an in camera inspection of the file, which was then in the possession of agent Bradford, for anything arguably exculpatory. Following this inspection, the trial court made available to Durham's trial counsel Hardeman's criminal history, his deactivation form (stating that he was no longer a confidential informant because of an arrest), and the fact that Hardeman had been used as an informant in 15 cases between February 7 and April 7, 2008. Following the provision of this information to Durham's trial counsel, counsel renewed his motion for mistrial based on the ground that the "information has only been provided to us in the middle of trial after the first witness has already testified."

During his subsequent cross-examination of agent Bradford, Durham's trial counsel extensively questioned Bradford about Hardeman's criminal history, including review of each of his convictions. Further, during the cross-examination of Hardeman, trial counsel elicited the fact that Hardeman had once been addicted to cocaine and again went through his convictions, introducing copies of them for the jury's consideration. Trial counsel also elicited the fact that Hardeman pled guilty to forgery on September 30, 2008, and that he had been "deactivated" as an informant as a result of these charges.

Durham specifies two categories of material which he contends were withheld by the state during trial — the criminal history documents for Hardeman and the "confidential informant file" held by SIU. As set out above, the criminal history included in the file

---

[8] Although the trial court relied on *State v. Luke*, 232 Ga. 815, 816 (209 SE2d 165) (1974) (extraneous crime admitted as part of res gestae) for its ruling, a ruling right for any reason will be affirmed. *Mathis v. State*, 279 Ga. 100, 102 (3) (a) (610 SE2d 62) (2005).

[9] Durham's pro se addition to trial counsel's motion for new trial raised this ground, and we consider whether denial of his motion for new trial on this ground was error.

inspected by the trial court was turned over to trial counsel and used to cross-examine Bradford and Hardeman. Although appellate counsel speculates about other files containing exculpatory information which may have been in the possession of agents of the state and destroyed before trial, there is nothing before us to substantiate such claims.

> To prevail on a *Brady* claim, a defendant must show that the State possessed evidence favorable to the defendant; defendant did not possess the evidence nor could he obtain it himself with any reasonable diligence; the prosecution suppressed the favorable evidence; and had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceeding would have been different.[10]

Durham has failed to carry this burden, and we find no error in the trial court's denial of his motion for new trial on this ground.

Appellate counsel argues a number of evidentiary rulings made by the court which are not enumerated as error. "The appellate court is precluded from reviewing the propriety of a lower court's ruling if the ruling is not contained in the enumeration of errors."[11]

3. Durham contends that his trial counsel rendered ineffective assistance to him by failing to file a motion to suppress the videotaped evidence showing the sales transactions in his residence because the videotaping was done in violation of OCGA § 16-11-62 (2) (B), (C).

To prevail on a claim of ineffective assistance of counsel, a defendant "bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency."[12] To show prejudice, a defendant must demonstrate "that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel."[13] It is axiomatic that "an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[14] "In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we indepen-

---

[10] (Citation omitted.) *Younger v. State*, 288 Ga. 195, 200 (4) (702 SE2d 183) (2010).

[11] (Citations omitted.) *Felix v. State*, 271 Ga. 534, 539 (523 SE2d 1) (1999).

[12] (Footnote omitted.) *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004).

[13] (Citations omitted.) *Allen v. State*, 277 Ga. 502, 503 (3) (591 SE2d 784) (2004).

[14] (Citation and punctuation omitted.) *Collier v. State*, 280 Ga. 148, 150 (2) (625 SE2d 757) (2006).

dently apply the legal principles to the facts."[15]

Pretermitting whether trial counsel was deficient, Durham has failed to establish prejudice. Durham is correct that OCGA § 16-11-62 (2) prohibits "any person, through the use of any device . . . to observe, photograph, or record the activities of another which occur *in any private place and out of public view*"[16] without the consent of all persons observed. Durham is also correct that, in this case, the agents failed to obtain an "investigation warrant permitting the use of [video equipment] for the surveillance of such person or place[,]" as required by OCGA § 16-11-64 (c). Trial counsel acknowledged that he was unaware of this statutory provision and, had he been aware of it, he would have filed a motion to suppress the video made inside Durham's home.

This, however, does not end the inquiry. Durham acknowledges that the audio recording of what transpired inside Durham's home was admissible, even if the video portion of the tape inside the home had been excluded.[17] In addition to the audio tape of the transaction, Hardeman testified in detail about the events during the two buys and identified Durham as the man he knew as "Crack" who was present and participated in both buys. Further, the agents searched Hardeman before each buy and kept him under surveillance to the extent possible during the transactions.

We conclude, as did the trial court, Durham has failed to show that a reasonable probability exists that the outcome of the case would have been different but for the deficient performance of counsel.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED APRIL 28, 2011.

*Jimmonique R. S. Rodgers*, for appellant.
*W. Kendall Wynne, Jr., District Attorney, Clint C. Malcolm, Assistant District Attorney*, for appellee.

---

[15] (Punctuation and footnote omitted.) *Mims v. State*, 301 Ga. App. 436, 437-438 (2) (687 SE2d 670) (2009).

[16] (Emphasis supplied.)

[17] See *Fetty v. State*, 268 Ga. 365, 366 (3) (489 SE2d 813) (1997) (OCGA § 16-11-62 does not apply to audio recording of a conversation by one who is a party to it.). Although not addressed by either party, it appears that, based on the language of OCGA § 16-11-62 (2) emphasized above, the portion of the video made outside Durham's home would also have been admissible, based on Hardeman's consent.